UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-24390-JEM

4 GP, INC., a corporation,
BRETT RICE, an individual,
and VICTOR BONOMI, an individual,

      Plaintiffs,

vs.

TURNING POINT BRANDS, INC.,
INTERNATIONAL VAPOR GROUP, LLC,
GRAHAM PURDY, an individual,
MARC WAXMAN, an individual, '
CORTNI LEWIS an individual,
JOHN DOES 1-10, and
ABC COMPANIES 1-10,

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants, Turning Point Brands, Inc. ("TPB"), International Vapor Group, LLC ("IVG"), Graham Purdy ("Purdy"), Marc Waxman ("Waxman"), and Cortni Lewis ("Lewis") (collectively "Defendants"), through undersigned counsel, hereby move to dismiss the Complaint filed by 4 GP, Inc. ("4GP"), Brett Rice ("Rice") and Victor Bonomi ("Bonomi") (collectively "Plaintiffs") on three independent grounds: failure to name an indispensable party pursuant to Fed. R. Civ. P. 19; failure to state a claim upon which can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and lack of subject matter jurisdiction for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

## INTRODUCTION

This lawsuit is Plaintiffs' attempt to avoid adjudication of their claim in arbitration against

1

the proper party.  This is a contract dispute between Plaintiff 4 GP, Inc. and its former franchisor, VaporFi Franchising, LLC, ("VaporFi").  But Plaintiffs do not name VaporFi and do not assert a breach of contract claim.  Rather, they attempt to recast their claim as tort claims—they allege conversion and tortious interference against VaporFi's corporate parents and individual employees of those companies.  Plaintiffs are trying to avoid resolving their dispute in the proper forum—arbitration pursuant to mandatory arbitration clauses in the agreements—against the proper party –VaporFi.[1]

Plaintiffs' complaint revolves around its investment in VaporFi franchise locations, and Plaintiffs demonstrate VaporFi is the actual party in interest by, among other things, describing it in the very first paragraph and referring to it and the agreements with it more than twenty times throughout the complaint.  Plaintiffs apparently believe that VaporFi breached the franchise agreements ("Franchise Agreements") and development agreement ("Development Agreement") between VaporFi and 4GP, Inc. (the Franchise Agreements and Development Agreement are collectively referred to herein as "Agreements").  They assert VaporFi breached the Agreements by terminating them due to 4GP's admitted breach.

---

[1] A different VaporFi franchisee, represented by the same counsel as Plaintiffs here, recently attempted to sue VaporFi, the franchisor, and IVG and TPB, the parent companies, and certain others in this court.  *See* Walter Hinton et al v. Turning Point Brands et al, Case No. 20-21476-CIV-Leonard, USDC Southern District of Florida and Exhibit B to Plaintiffs' Complaint.  This court, Judge Leonard, granted VaporFi's motion to compel arbitration and IVG and TPB's motion to stay pending arbitration.  (see *Omnibus Order Granting Defendant VaporFi Franchising LLC's Motion to Compel Arbitration and Stay Case (D.E. 16), Granting Defendant Turning Point Brands, Inc.'s and Defendant International Vapor Group, Inc.'s Motion to Stay Pending Arbitration (D.E. 14), Granting Defendant Nicolas Molina's Motion to Stay Pending Arbitration (D.E. 47), Denying without Prejudice Defendant DCV Franchise Group's Motion to Dismiss (D.E. 58) and Staying and Administratively Closing Case*, dated November 16, 2020, attached as Exhibit F).  The arbitration with VaporFi is proceeding.  In an apparent attempt to avoid that result, these Plaintiffs conspicuously do not name VaporFi and attempt to prevent VaporFi from defending its actions in the available forum.

77184623.4

This effort to assert tort claims against different parties rather than assert the actual claim of breach of contract against the party in interest, fails as a matter of law on at least three independent grounds:  failure to name an indispensable party; failure to state a claim upon which relief can be granted; and lack of subject matter jurisdiction for lack of standing.

First, VaporFi is an indispensable party, as its rights and interests regarding the terms and enforcement of its Agreements is the threshold issue that must be determined before liability could ever attach to these parties under the tort claims asserted.  VaporFi would be prejudiced if its Agreements were interpreted and its conduct assessed under the Agreements' terms without it being present in the case.  Under Fed. R. Civ. P. 19, Plaintiffs must include VaporFi as a party in their Complaint.  However, because 4GP agreed that any claim against VaporFi and all claims challenging termination must be arbitrated, they cannot sue VaporFi in this Court.  As such, the case must be dismissed so that the threshold issue--whether VaporFi breached the Agreements--can be adjudicated against the correct party in the required forum—arbitration.

Second, Plaintiffs have failed to state a tort claim against these defendants for either tortious interference or conversion.

- A parent company is not liable for tortious interference with a subsidiary's contract even when it causes the subsidiary to breach that contract because it enjoys a privilege to look out for its own economic interests, unless it used improper means. Plaintiffs do not allege any defendant utilized improper means.

- An individual officer is not liable for tortious interference with a contract between the company and a third party as long as he or she is acting in the scope of his or her employment.  Plaintiffs do not allege that the individual defendants acted outside the scope of their employment.

3

77184623.4

- To state a claim for conversion, the plaintiff must own the property it alleges the defendants converted, and the defendants must have exerted dominion or control over that property. Plaintiffs merely recite contract damages in the list of what they say they lost. They do not allege that they owned the things they allege they lost and the Agreements make it clear they did not. Nor do Plaintiffs allege that these defendants took possession of those items. Damages or harm following a loss of rights caused by termination of a contract is not conversion. Plaintiffs have not and cannot make those allegations to sustain the tort claims they allege against Defendants.

Third, Plaintiffs Rice and Bonomi do not have standing. They are owners of 4GP, the franchisee. Only 4GP, the franchisee—the party to the Agreements—could possibly have standing to assert claims relating to the termination of the Agreements.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that 4GP entered into a development agreement with VaporFi, pursuant to which VaporFi granted 4GP the right to open and operate five VaporFi franchised locations in the greater Washington, D.C. area. Complaint ¶¶ 62, 67, 68. 4GP then entered into four franchise agreements with VaporFi for four locations, with each franchise agreement granting 4GP the right to own and operate a specific VaporFi franchised location pursuant to the terms and conditions thereof. *Id.* at ¶¶ 67–68. The Agreements are attached hereto as Exhibits A–E.[2] Plaintiffs Rice

---

[2] Plaintiffs cite and refer to the Agreements throughout the Complaint and their claims. Because the Agreements are central to the Plaintiffs' claims and the authenticity of the Agreements is not in dispute, the court may consider the Agreements and the terms of the Agreements in resolving the instant Motion to Dismiss. *See Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) ("Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference' doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is (1) central to the plaintiff's claim; and

4

and Bonomi are two of 4GP's four owners.  Complaint ¶¶ 40–41.  *See also* Exhibit E to each Franchise Agreement, which are attached at Exhibits B–E hereto and list the four owners of 4GP.

Plaintiffs allege they disputed VaporFi's accounting with respect to payments to franchisees.  *See, e.g.*, Complaint ¶¶ 6, 9, 78 & 87.[3]  They unilaterally withheld royalties owed to VaporFi under the Franchise Agreements on the basis that VaporFi should have paid them more for online sales.  *Id.* at ¶¶ 10 &12.  The Franchise Agreements unambiguously precluded 4GP from offsetting any amounts it claimed were due from VaporFi.  *See* Franchise Agreements § XIII.C.  Therefore, after 4GP's repeated and long-standing refusal to pay the royalties despite repeated notice, VaporFi terminated the Agreements[4].  *See* Complaint ¶ 95 and Termination Notice dated July 26, 2019, attached as an Exhibit to Plaintiff's Complaint. [5]

---

(2) undisputed.  'Undisputed' in this context means that the authenticity of the document is not challenged.") (citations omitted).  The Development Agreement is attached as Exhibit A hereto, and the Franchise Agreements dated September 18, 2014, January 16, 2015, March 12, 2015, and March 12, 2015 are attached respectively at Exhibits B–E hereto.

[3] While somewhat obfuscated in the Complaint, 4GP complained of payments VaporFi credited to it pursuant to an agreement to pay a portion of revenue arising from online sales to customers within the territories designated in the Franchise Agreements.  *See* Complaint ¶¶ 6 & 9.  Plaintiffs' assertion that VaporFi owed money to 4GP is denied, as is the allegation that Lewis told 4GP it could offset its royalty payments while the parties negotiated this issue.  These details, however, need not be resolved in the context of this Motion (and Plaintiffs allegations and reasonable inferences must be accepted as true only for the purpose of this Motion under Fed. R. Civ. P. 12(b)(6)).

[4] The termination was entirely proper as VaporFi terminated the Agreements in July 2019 for non-payment of royalties for over 18 months--since December 2017.  In addition, by then, 4GP had closed one of the shops and two of the three were without valid leases in violation of the respective franchise agreements.

[5] As noted in footnote 3, Defendants dispute many of Plaintiffs' allegations, including the claim that VaporFi owed money to 4GP, for whom certain of the individuals worked, their alleged capacities, and the relationship and actions of the defendant parent companies, including the relevance of TPB's sending the termination notice on behalf of VaporFi.  Again, these and the many other disputed allegations need not be resolved (and may be accepted as true under Fed. R. Civ. P. 12(b)(6) for the sole purpose of considering this Motion).

77184623.4

Plaintiffs assert that the termination was improper and that VaporFi breached the Agreements. *See generally* Complaint, Count I. They then claim IVG and TPB terminated or caused VaporFi to terminate the Agreements. *Id.* They assert a claim for tortious interference with contract. *Id.* Further, they complain that losing their "franchise rights, associated revenues, goodwill, equity interest in the stores, and related chattels" qualifies to support a claim for conversion. *Id.* at ¶¶ 33, 123 & 124.

## ARGUMENT

### A.      The Complaint Should Be Dismissed for Failure to Name an Indispensable Party.

The Complaint should be dismissed because VaporFi, the party to the Agreements at issue, is an indispensable party under Federal Rule of Civil Procedure 19. *Spear Group Inc. v. Florida Power and Light Co.*, 2014 WL 272724, at *4–5 (S.D. Fla. Jan 23, 2014). Rule 19 establishes a two-step inquiry to determine whether VaporFi is an indispensable party to this suit. *Id.* at *2. First, under Rule 19(a)(1), the court asks whether VaporFi is a "person to be joined if feasible," i.e., whether it is a "necessary party" to the litigation. *Id.* If VaporFi is a necessary party under Rule 19(a)(1), then the court must order its joinder, if feasible. *Id.*, citing Fed. R. Civ. P. 19(a)(2). If the court concludes that VaporFi is a necessary party, but that its joinder is not feasible, then the second question is triggered: under Rule 19(b), the court must determine whether the party is indispensable; that is, whether "in equity and good conscience," the action should proceed among the existing parties without the indispensable party or be dismissed. *Id.*, citing Fed. R. Civ. P. 19(b) and *Enza Inc. v. We the People, Inc.,* 838 F.Supp. 975, 977 (E.D. Pa. 1993).

For the reasons set forth below, VaporFi is a necessary and indispensable party but cannot be added due to the arbitration clause in the Agreements. In equity and good conscience, this action should be dismissed without the presence of the indispensable party.

6

### 1.  VaporFi is a necessary party that cannot be joined

VaporFi is a necessary party.  A party is deemed necessary under Fed R. Civ. P. 19(a)(1) if: (1) its absence will prevent the court from granting complete relief to the existing parties, or (2) the party claims an interest relating to the subject matter of the action and its absence in the litigation may (i) as a practical matter impair or impede its ability to protect that interest, *or* (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.  *Spear*, 2014 WL 272724, at *2; *see also* Fed. R. Civ. P. 19(a)(1); 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Section § 1604 (2d ed. 1997).

VaporFi is a necessary party because it is the party to the Agreements at the center of this dispute.  The claims necessarily require the court to interpret the Agreements and determine the parties' rights and obligations under the Agreements, including specifically whether VaporFi had the right to terminate the Agreements due to 4GP's breach.  VaporFi's rights under the Agreements are at issue—and are, indeed, the threshold issue, as it is axiomatic that Plaintiffs cannot prevail on either of the claims they assert unless it is first established that VaporFi's termination of the Agreements breached those Agreements.  In order to resolve the claims, the Court will have to adjudicate VaporFi's rights under the agreements.  In short, VaporFi is necessary because this action "may as a practical matter impair or impede" VaporFi's ability to protect the interest that it holds with respect to the interpretation of its Agreements and the parties' respective rights under those Agreements.  Indeed, it is a general rule that in breach of contract actions all parties to the contract are deemed necessary ones to the litigation.  *Spear*, citing *Acton Co. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 78–79 (1st Cir. 1982).

Because it is a necessary party, under Rule 19(a)(2), VaporFi must be joined as a party defendant if feasible.  However, claims against VaporFi regarding termination of the Agreements

77184623.4

must be arbitrated.  *See* Franchise Agreements and Development Agreement, Exhibits B–E § XXII.L and Exhibit A § XVI.C, respectively.  As such, plaintiffs cannot name VaporFi in this action. Plaintiffs should be required to demand arbitration to adjudicate the question of whether the termination was proper before attempting federal court tort claims against the parent companies and certain officers—especially when the claims are dependent on an initial finding that VaporFi breached the Agreements.

### 2.  VaporFi is an indispensable party, as well, and therefore the case must be dismissed

Because VaporFi's joinder is not feasible in this litigation, the question then centers on whether VaporFi is indispensable to this suit under Rule 19(b).  This is a case-by-case analysis. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118–19 (1968).  In reaching a determination on the issue of "indispensability," the court is to consider the following four factors: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).  The Supreme Court has identified four corresponding interests which are promoted by these four factors:  (1) the interest of the absent party; (2) the defendant's interest in avoiding inconsistent relief, multiple litigation or sole responsibility for a liability which it shares with an absent party; (3) the interests of the public and the courts in consistent, complete, and efficient settlement of cases, and (4) the plaintiff's interest in having an appropriate forum.  *Provident,* 390 U.S. at 108–11.

The evaluation of factor one—prejudice to VaporFi—closely parallels the same analysis as whether VaporFi is a necessary party pursuant to Rule 19(a).  *Spear*, 2014 WL 272724, at *4.

77184623.4

VaporFi was the party to the Agreements with 4GP under which Plaintiffs seek damages in this action.  Thus, a favorable ruling for Plaintiffs in this action would necessarily be prejudicial to VaporFi, who would at least be potentially liable under the ruling, as the ruling would necessarily have to rely on a finding of VaporFi's breach of the Agreements.  Therefore, VaporFi has a very significant interest in the outcome of this litigation.

The second factor is the extent to which measures may be taken to avoid any prejudice, and the corresponding interest is the existing defendants' interest in avoiding inconsistent relief, multiple litigation or sole responsibility for a liability that they share with an absent party.  *Id*., citing *Provident,* 390 U.S. at 110.  Here, if VaporFi is absent, no fashioning of a judgment could protect its interests.

The third factor is whether a judgment rendered without VaporFi in this action will be adequate.  The corresponding *Provident* interest is that of the public and the courts in the complete and efficient settlement of controversies. *Id. citing Provident,* 390 U.S. at 111.  There is no scenario in which these tort claims against non-parties to the Agreements will be adjudicated in the same proceeding as the threshold question of whether the termination was proper or breached the Agreements.  Therefore, the much more efficient resolution of the issues raised by Plaintiffs requires that Plaintiff first pursue adjudication of that threshold issue in the proper forum.  Otherwise, after this case concludes, Plaintiffs would remain free, in principle, to initiate yet another action (in arbitration) against VaporFi, which could result in inconsistent findings and repeat trial of the same issue(s).  Thus, this factor also favors a finding of indispensability.

Finally, the court is to consider whether Plaintiffs will have an adequate forum if the action is dismissed.  *Id.*, citing *Provident,* 390 U.S. at 109.  Because the threshold issue of whether VaporFi had the right to terminate the Agreements or it breached those Agreements by terminating

77184623.4

them can be adjudicated in arbitration, as other VaporFi franchisees represented by the same counsel are doing now, Plaintiffs have a convenient and available forum to pursue that claim— Plaintiffs can obtain adjudication of a breach of contract claim against VaporFi in arbitration[6].  If an arbitrator would determine that VaporFi breached the Agreements, then conceivably Plaintiffs could pursue these claims (except that they otherwise fail as a matter of law, see below) without prejudicing VaporFi and minimizing the likelihood of inconsistent results.  Thus, this factor also supports a finding of indispensability at this time.

> **B.**      **The Complaint Should Be Dismissed Because the Tortious Interference Claim and Conversion Claim Fail as a Matter of Law.**

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pled allegations as true and view those allegations in the light most favorable to the non-moving party.  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).  A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To make such an assessment, the Court first discards those averments that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id*. at 678.  The Court takes the remaining, well-pled factual contentions, treats them as true, and ascertains whether those facts (coupled with the law establishing the requisite elements of the claim) support a claim that is "plausible" under the facts alleged.  *Id*. at 679-80.  The burden is on the plaintiff to frame a complaint with factual allegations which 'raise a right to relief above the speculative level.'"  *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 275 F.Supp.3d 1332, 1339 (S.D. Fla. 2017), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff "need not provide detailed factual allegations" but must plead

---

[6] VaporFi would, of course, have all available defenses to any such claim in arbitration, including but not limited to the time and damages limitations in the Agreements.

77184623.4

more than conclusory statements.  *Id.*

Under this standard, both Plaintiffs' tortious interference claim and conversion claim must be dismissed for failure to state a claim upon which relief can be granted.  Neither claim is "plausible on its face" because Plaintiffs cannot satisfy the elements of either claim.  *See, e.g., McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 398 (Fla. 1st DCA 1992) (finding the trial court erred in failing to grant defendant's motion to dismiss plaintiff's tortious interference claim where the complaint failed to allege inducement of the contracting party and therefore failed to state a cause of action for tortious interference); *See, also Patterson v. Stathas*, 2007 WL 9702360, at *3 (S.D. Fla. April 17, 2007) (granting motion to dismiss with prejudice plaintiff's tortious interference claim where the interfering defendant was not a third party or stranger to the business relationship); *Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F.Supp.3d 1362, 1368 (M.D. Fla. 2014) (dismissing claim for conversion at motion to dismiss stage).

## 1. <u>Plaintiffs Have Failed to State a Claim for Tortious Interference Against IVG and TPB</u>.

A parent company is not liable for tortious interference with contract for directing conduct of its subsidiary even if the subsidiary's action as directed breaches that contract.  *Johnson Ent. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d. 1290 (11th Cir. 1998).  Such direction by the parent is privileged.  *Id*.  Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged.  *Id.*  "Improper means" include "physical violence, misrepresentations, intimidation conspiratorial conduct, illegal conduct, and threats of illegal conduct."  *Carlwood Safety, Inc. v. Wesco Distribution, Inc.*, 446 F.Supp.3d 970, 980 n. 9 (M.D. Fla. 2020) (granting summary judgment in favor of defendant on plaintiff's tortious interference claim).

A parent company has the requisite financial interest in the subsidiary's business to invoke

11

the privilege. *Id.*, citing *Babson Bros. Co. v. Allison*, 337 So. 2d 848, 850 (Fla. 1st DCA 1976), which held that "[i]t is clear that a controlling stockholder of a corporation falls within the privilege when he interferes with a contract between the corporation and a third person." Further, there is no allegation that TPB employed improper means—indeed the Complaint is totally bereft of any allegation of physical violence, misrepresentations, intimidation conspiratorial conduct, illegal conduct, and threats of illegal conduct by any defendant.

In *Johnson*, a contractor sued both the company with which it had a construction contract and that company's parent entities for multiple claims arising out of the company's termination of the contract, which it claimed was wrongful and in breach. *Johnson*, 162 F.3d. at 1301–03. Addressing the claim that the parent company tortuously interfered with the contract by causing its subsidiary to terminate it, the court found that the parent company's alleged actions were privileged because a parent company has the requisite interest in its subsidiary. *Id.* at 1321–22. The court acknowledged that an exception might exist if the parent company employed improper means in protecting its interest, but found that plaintiff had not established that the parent company had done so. *Id.* Specifically, the court rejected the assertion that improper means might be satisfied if the parent company acted with malice toward the plaintiff, stating, "it is irrelevant whether the person who takes authorized steps to protect his own interest does so while also harboring some personal malice or ill-will toward the plaintiff." *Id.* at 1322 (citation omitted). Further, the court noted that even a purposeful act causing a subsidiary to breach is not enough to overcome the privilege. *Id.* at 1322 n. 74.

Here, plaintiffs attempt the same frivolous effort to name the parent companies for tortious interference but with even fewer allegations then the court found insufficient in *Johnson*. In *Johnson*, the plaintiffs presented evidence that the parent companies were motivated by malice and

ill will toward the plaintiff. Here, Plaintiffs make no such allegation and have offered no other allegations to support that defendants used physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct, as would be required.

In addition, after reversing on all but one contract claim (for which it awarded only nominal damages) and remanding for an attorney fee determination, the Circuit Court's admonishment of the Plaintiff's attempt to characterize what should have been a straightforward breach of contract claim as tort claims against the parent companies bears quoting, as it is equally applicable here:

> We would be remiss if we concluded this opinion without explaining how a fairly simple dispute over the installation of a series of cable television systems could lead to chaotic, expensive, and time-consuming litigation (including trial) on matters that had little relevance to the true matters in dispute. What is there about our method of processing civil cases that permits a case such as this to consume such an enormous portion of the trial and appellate courts' dockets? The problem begins with the manner in which civil cases are pled, a manner that largely ignores the letter and the spirit of the Federal Rules of Civil Procedure and does great disservice to the administration of civil justice. The problem is exacerbated by the district courts' toleration of this practice.
>
> In this case, the problem started with a fifty-page, 173–paragraph complaint that began with thirty-seven paragraphs of general allegations that were incorporated by reference into each count of the complaint. These general allegations operated as camouflage, obscuring the material allegations of JEJ's claims and necessarily implying that all the allegations were material to each claim. This strategy was legitimized by the defendants' decision not to move the district court, pursuant to Rule 12(e), for a more definite statement, or, pursuant to Rule 12(f), to strike from each count the immaterial incorporated general allegations….The final result was that JEJ recovered $5.5 million at trial on a pair of tort claims —despite the fact that JEJ's true claim was contractual—and on a contract claim (based on the 1987 Contract's right-of-first-refusal provision) that was not alleged in either the initial or amended complaint.
>
> Had the district court carefully sorted through the complaint at the beginning of the litigation, it would have realized that the general allegations of "greenmail" and fraud on the franchising authorities were irrelevant to the case, and that the case was essentially a two-fold breach of contract action. …
>
> The result is a massive waste of judicial and private resources; moreover, "the litigants suffer, and society loses confidence in the court[s'] ability to administer justice."

*Id.* at 1332–33, citation omitted.

## 2. **Plaintiffs Have Failed to State a Claim for Tortious Interference Against Purdy, Waxman, and Lewis.**

Plaintiffs' tortious interference claim fails against the individual employees not only

because Plaintiffs do not allege improper means, but also because they do not and cannot allege the individuals were acting outside the scope of their employment.  "[A]n agent of a corporate party to the business relationship cannot be held liable for tortious interference if he was acting within his capacity and scope as an agent of the corporation . . . [t]hus a corporate officer is not liable for tortious interference unless he acted outside of the scope of his employment or against the best interests of his corporations." *SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F.Supp.2d 1178, 1199 (S.D. Fla. 2013) (citations omitted).  Here, Plaintiffs set forth no allegations that Purdy, Waxman, or Lewis "exceeded their authority as corporate officers" or that their alleged involvement in the termination of the Agreements harmed the interests of VaporFi (or IVG or TPB).  "Without such allegations, Plaintiffs' tortious-interference claims fail on their face." *Id.*

### 3.  <u>The Conversion Claim Fails as a Matter of Law</u>.

Plaintiffs' claim for conversion fails as a matter of law because even accepting their allegations as true, they never owned what they claim they lost and these defendants did not exert dominion or control over what they claim they lost.  Rather, Plaintiffs merely list categories of damages they might seek if they had asserted a claim for breach of the Agreements.

"It is well settled that a conversation is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Premier Gaming Trailers LLC v. Luna Diversified Ent., Inc.*, 304 F.Supp.3d 1270, 1289 (M.D. Fla. 2018) (citation omitted).  Accordingly, Plaintiffs must have owned that of which they claim Defendants deprived them and must allege that these defendants took possession of it.  *Id.* at 1289.  *See also Bain v. Jockey Club Technology Servs., Inc.*, 2007 WL 9706994, at *5 (granting defendant's motion to dismiss plaintiff's conversion claim and noting that "[w]here a defendant does not take possession of the chattel, conversion is legally impossible").

<u>First</u>, Plaintiffs never owned that which they claim they lost.  They allege that when

14

VaporFi terminated the Agreements, Plaintiffs lost "franchise rights, associated revenues, goodwill, equity interest in the stores, and related chattels." Complaint, ¶ 33. They similarly allege they lost their "economic interest in the stores, and all associated value and goodwill" and the "interest in their franchise locations, associated rights, goodwill and chattel." Complaint, ¶¶ 123 & 124. That is, Plaintiffs claim when the license to use the VaporFi trademarks, system and confidential information was terminated, they were no longer permitted to use the VaporFi trademarks, system, confidential information or goodwill and were damaged by losing those rights. That is at most a breach of contract claim. It is not conversion because Plaintiffs 4GP never owned the trademarks, system, confidential information, or goodwill licensed to them by VaporFi.

The Agreements are clear and unambiguous in this regard. VaporFi owns the trademarks, system, confidential information, and goodwill, and it licensed the right to use and display the trademarks, system, and confidential information pursuant to the Agreements between it and 4GP. 4GP can claim no ownership of the trademarks, system, confidential information or goodwill. *See* Franchise Agreements, §I.A; I.B & XVI.A at Exhibits B–E. For example, in §I.B, 4GP agreed:

> Franchisee expressly acknowledges Franchisor's rights in and to the [service marks, trademarks, trade names, commercial symbols and logos (hereinafter "Proprietary Marks")] and agrees not to represent in any manner that Franchisee has acquired any ownership rights therein. Franchisee's right to use the Proprietary Marks is derived solely from this Agreement and is limited to the conduct of business by Franchisee pursuant to and in compliance with this Agreement. This Agreement confers no goodwill or other interest in the Proprietary Marks upon the Franchisee other than the right to use the Proprietary Marks in the operation of the Shop in compliance with this Agreement and all applicable standards . . . . Franchisee agrees not to contest Franchisor's title to the Proprietary Marks. Any goodwill established in the Proprietary Marks by reason of Franchisee's use of them shall inure solely to Franchisor's exclusive benefit and upon expiration or termination of this Agreement for any reason, no monetary amount shall be assigned as attributable to any goodwill associated with Franchisee's use of the Proprietary Marks.

And in § XVI.A:

> Franchisee acknowledges that knowledge of Franchisor's marketing

methods, product analysis and selection, service methods, skills relating to the development and operations of a Shop, know-how, techniques, information, trade practices and other proprietary data is derived entirely from information disclosed to Franchisee by Franchisor and that such information is proprietary, confidential, and trade secrets of Franchisor ("Confidential Information") . . . It is expressly agreed that the ownership of all of the Confidential Information is and shall remain vested solely in Franchisor and that all customer lists and associated data and information obtained in the first instance by Franchisee is and shall be the exclusive property of Franchisor . . . .

If VaporFi did not have the right under the Agreements to terminate them for 4GP's admitted breach, then that would at most be a breach of contract (to be arbitrated between the parties to those Agreements.)  But as the court found in *Premier Gaming*, the loss of a contract right is not conversion because there, as here, the plaintiff did not own the property it claimed it no longer possessed.  *Id.* at 1290.  See also, *Coastal Petroleum Co. v. Int'l Minerals & Chemical Corp.*, 709 F.Supp. 1092, 1095 (M.D. Fla. 1988) (granting summary judgment on conversion claim because plaintiffs did not obtain ownership of minerals through a mining lease that permitted it to explore and extract minerals it finds).

Second, as noted above, to assert a claim for conversion, a plaintiff must allege the defendant exerted dominion or control over the property.  *Premier Gaming* at 1289.  Here, as noted above, VaporFi owns the trademark and system and it has control over the same.  Plaintiffs have not alleged, and cannot allege, that the parent companies or the officers it named in this lawsuit asserted the required dominion over the rights they claim they lost.

## C.      The Complaint Should Be Dismissed Because Plaintiffs Rice and Bonomi Lack Standing.

A motion to dismiss for lack of standing implicates the court's subject matter jurisdiction and is therefore appropriately brought under Federal Rule of Civil Procedure 12(b)(1).  *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003) (noting that "because the constitutional standing doctrine stems directly from Article III's 'case or controversy'

77184623.4

requirement, th[e] [standing] issue implicates our subject matter jurisdiction, and accordingly must be addressed as a threshold matter. . . .").

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.,* 501 F.3d 1244, 1251 (11th Cir. 2007). Where, as here, a motion to dismiss is based on a facial attack on the complaint, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008) (explaining that a trial court's standard of review of a motion to dismiss under Rule 12(b)(1) is the same as for a motion to dismiss under Rule 12(b)(6)).

Under Florida law, an individual owner lacks standing to prosecute a company's claims in the individual owner's own name. *See Greenfield v. Stein*, 16 So. 3d 967, 968 (Fla. 3rd DCA 2009) (affirming dismissal of shareholder as an individual party plaintiff in suit brought by corporation and its shareholder against lenders). If the claims asserted had merit, which they do not, only the real party in interest, which is 4GP, should have brought the complaint, not some of the individual owners of 4GP. *James Talcott, Inc. v. McDowell*, 148 So. 2d 36, 37 (Fla. 3rd DCA 1962) (noting the general rule that shareholders, officers, and directors do not have standing to prosecute the corporation's claim in their own name). Therefore, the Complaint by Rice and Bonomi should be dismissed for lack of standing.

## CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiffs' Complaint.

77184623.4

Date: March 29, 2021

Respectfully submitted,

*/s/ Brendan I. Herbert*
Brendan I. Herbert, Esquire
Florida Bar No. 76925
bherbert@polsinelli.com
POLSINELLI PC
1111 Brickell Avenue, Suite 2800
Miami, Florida  33131
Tel.:  305-921-1820
Fax:  305-921-1801

Leonard H. MacPhee, Esquire *
lmacphee@polsinelli.com
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, Colorado  80202
Telephone:  (303) 583-8234
*Pro Hac Vice

*Attorneys for Defendants, Turning Point Brands Inc.,*
*International Vapor Group, LLC, Graham Purdy,*
*Mark Waxman and Cortni Lewis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically

filed using the CM/ECF system which will provide notice to all counsel of record this **29th** day of

March, 2021:

Matthew Person
Person Law
9560 NW 41 Street
Doral, FL 33178
Telephone:  (305) 640-5754
matt@personlawoffices.com
*Counsel for Plaintiff*

Fax:  (888) 402-6190
Louis D. Tambaro
Offit Kurman, P.A.
louis.tambaro@offitkurman.com
Pro Hac Vice

*/s/ Brendan I. Herbert*
Brendan I. Herbert, Esquire

18

77184623.4