**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:20-cv-24390-JEM**

4 GP, INC., a corporation,
BRETT RICE, an individual,
and VICTOR BONOMI, an individual,

       Plaintiffs,

vs.

TURNING POINT BRANDS, INC.,
INTERNATIONAL VAPOR GROUP, LLC,
GRAHAM PURDY, an individual,
MARC WAXMAN, an individual,
CORTNI LEWIS an individual,
JOHN DOES 1–10, and
ABC COMPANIES 1–10,

       Defendants.

_____/

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Turning Point Brands, Inc. ("TPB"), International Vapor Group, LLC ("IVG"), Graham Purdy ("Purdy"), Marc Waxman ("Waxman"), and Cortni Lewis ("Lewis") (collectively "Defendants"), through undersigned counsel, hereby seek summary judgment on the remaining claim asserted by plaintiff 4 GP, Inc. ("4GP",[1] "Plaintiff" or, sometimes "Plaintiffs") pursuant to Fed. R. Civ. P. 56.

---

[1] By order dated February 25, 2022 [ECF Doc. No. 29], the Court dismissed the claims of named Plaintiffs Victor Bonomi and Brett Rice. We sometimes refer to Plaintiffs in this motion but recognize that Mr. Bonomi and Mr. Rice do not remain in the case.

1

**INTRODUCTION**

Plaintiff's complaint ("Complaint") revolves around the termination of four franchise agreements ("Franchise Agreements") and a development agreement ("Development Agreement") between VaporFi Franchising, LLC ("VaporFi") and 4GP, Inc.  (The Franchise Agreements and Development Agreement are collectively referred to herein as "Agreements" and are attached to the Declaration of Cortni Lewis, which is provided with Defendants' Statement of Material Facts.) Plaintiff asserts that the Defendants tortiously interfered with the Agreements by causing the Agreements to be terminated.  *See* Complaint [ECF Doc. No. 1] (Count I is for "Tortious Interference with Franchise and Development Agreements" against all defendants.).[2]

Plaintiff's claim fails as a matter of law based on certain undisputed facts and the clear and unambiguous terms of the Agreements.

First, there can be no tortious interference if VaporFi had the right to terminate the Agreements.  The undisputed facts establish that it did as a matter of law.  As shown in Defendants' Statement of Material Facts, filed contemporaneously herewith, it is undisputed that (1) Plaintiffs did not pay owed Royalty Fees and Marketing Fund contributions for many months, (2) VaporFi sent monthly written statements to 4GP advising 4GP that it owed the Royalty Fees and Marketing Fund contributions throughout that period, and (3) the Agreements expressly state that (a) the franchisee may not offset Royalty Fees or Marketing Fund contributions owed under any circumstances and (b) no waiver or amendment of the fully integrated Agreements would be effective without a signed writing.  *See* Defendants' Statement of Material Facts, ¶¶ 7–8. Accordingly, VaporFi had every right to terminate the Agreements for uncured breach.  Any

---

[2] The Complaint also included a claim for conversion against all Defendants, which this Court by order dated February 25, 2022 [ECF Doc. No. 29] dismissed.

2

defenses that 4GP might attempt to advance are precluded as a matter of law by the express terms of the clear, unambiguous and fully integrated Agreements.

Second, Plaintiffs cannot establish essential elements of their claim.  There is no evidence in the record of improper means or motivation based *solely* on malice and no evidence of damages, as is required.  Indeed, Plaintiffs *have not produced any documents* under the required initial disclosures, *have not produced any documents* in response to the Requests for Production of Documents served on them (Plaintiffs only provided written responses and objections, in which they mostly stated they would produce responsive documents), and *have provided no response or objections whatsoever* in response to the Interrogatories served on them.  *See* Defendants' Statement of Material Facts, ¶¶ 15, 20–22.  Those documents and responses are long overdue.[3] The last day to complete discovery was January 31, 2022.  *See* Order Granting in Part Joint Motion to Amend Scheduling Order dated December 7, 2021 [ECF Doc. No. 28].  As shown below, Plaintiffs are now precluded from presenting documents that they should have produced (and were not already produced by Defendants) or relying on evidence that should have been provided. Plaintiffs cannot show evidence of improper means or that the actions at issue were undertaken solely with malice, and they have absolutely no evidence of damages.

### **ARGUMENT**

#### A. **Legal Standard Under Fed. R. Civ. P. 56 (a), (c)(1)(A) and (c)(1)(B).**

Defendants are entitled to summary judgment if Defendants show that there is no genuine dispute as to any material fact, and Defendants are thus entitled to judgment as a matter of law.

---

[3] While the parties agreed informally to an extension of initial productions of documents and some level of a rolling production of documents thereafter, Plaintiffs have provided nothing to date in breach of even that informal agreement.

82297755.1

Fed. R. Civ. P. 56(a).  A defendant may do so by showing through competent evidence that the plaintiff cannot prevail based on the undisputed facts or that the plaintiff cannot produce admissible evidence to support necessary elements of the claim.  Fed. R. Civ. P. 56(c)(1)(A) and (B); *see, e.g.*, *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, 2018 WL 4932871, at *11 (S.D. Fla. Apr. 23, 2018) (dismissing claim for tortious interference with contract based on deposition testimony); *see also Carlwood Safety, Inc. v. Wesco Distribution, Inc.*, 446 F. Supp. 3d 970, 980 n. 9 (M.D. Fla. 2020) (granting summary judgment in favor of defendant on plaintiff's tortious interference claim because defendant "was not a stranger" to the relationship and "any interference was justified"); *see also Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1338–1339 (granting summary judgment on tortious interference with business relations claim where defendant was contractually entitled to waive requirements under a letter of credit issued by bank to plaintiff).

Here, Plaintiffs have the burden of proving their tortious interference claim.  Where the nonmoving party (here, Plaintiffs) bears the burden of proof at trial, the moving party (here, Defendants) may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a nonmoving party's claim or affirmative defense.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When the nonmoving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material negating the opponent's claim."  *Id.* at 323.  Rather, the moving party may discharge its burden by showing that "there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  The nonmoving party, in response, must then "cite to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute."  Fed R. Civ. P. 56(c)(1); *see also Lombardi v. Aramark*, 2016 WL 7626196

4

(S.D. Fla. Sept. 23, 2016) (granting defendants' motion for summary judgment on tortious interference and other claims because plaintiff could not refute defendant's argument that there was an absence of evidence to support plaintiff's claims).

Because Plaintiffs have failed and refused to produce *any* documents and failed to provide *any* responses to the Interrogatories served on them, they are now precluded from offering as evidence those documents and declarations that should be been produced or provided. *See* Fed. R. Civ. P. 37(c) ("[A] party who fails to disclose information . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial."). *See also Satterfield v. CFI Sales & Marketing, Inc.*, 2011 WL 13298382, at *3 (M.D. Fla. Oct. 6, 2011) ("[Plaintiff's] failure to produce the documents in response to the specific discovery request for them . . . precludes her from relying on the documents at trial.").

B.  **Because the Undisputed Facts Establish That VaporFi Had the Right to Terminate the Agreements, There Was No Breach and Without a Breach, There Can Be No Tortious Interference.**

Under Florida law, a plaintiff must prove the following elements to sustain a cause of action for tortious interference with a contractual relationship: "(1) The existence of a contract; (2) The defendant's knowledge of the contract; (3) The defendant's intentional procurement of the contract's breach; (4) Absence of any justification or privilege; [and] (5) Damages resulting from the breach." *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1321 (11th Cir. 1998), citing *Florida Tel. Corp. v. Essig*, 468 So.2d 543, 544 (Fla. 5th DCA 1985).[4]  It

---

[4] The necessary elements material for this motion are the same for a claim of tortuous interference with business relations.  Plaintiffs' Complaint is unclear as to whether they are claiming tortious interference with contract or the separate tort of interference with business relations. For a tortious interference with business relations claim, a plaintiff must show: "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional

82297755.1

is axiomatic that there can be no tortious interference if there was no breach because the third element necessarily cannot be met. *See Gerber v. Keyes Co.*, 443 So. 2d 199, 201 (Fla. 3d DCA 1983) (affirming dismissal of tortious interference claim where there was no breach of contract); *see also Hager v. Venice Hospital, Inc., et al.*, 944 F. Supp. 1530, 1534-35 (M.D. Fla. 1996) (granting summary judgment on tortious interference claim after finding that plaintiff had not presented sufficient evidence that contracts at issue had been breached). Because VaporFi had the right under the Agreements to terminate them, the Defendants could not as a matter of law have tortiously interfered with the contracts.

It is undisputed that VaporFi had the right to terminate the Agreements. Plaintiffs did not pay owed Royalty Fees and Marketing Fund contributions for many months notwithstanding the written notice of the past due amounts sent to them month after month. Defendants' Statement of Material Facts, ¶¶ 10–12. The Agreements clearly and unambiguously provided the right to terminate the Agreements if 4GP did not pay Royalty Fees or Marketing Fund contributions within five (5) days after receiving written notice that any such amounts were overdue. Defendants' Statement of Material Facts, ¶ 6.

Plaintiffs' attempt to avoid termination for their breach fails as a matter of law. Plaintiffs admit they did not pay owed Royalty Fees and Marketing Fund contributions but allege they disputed VaporFi's accounting with respect to payments to franchisees for online sales and

---

and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Thus, both torts require the plaintiff to prove that there was intentional procurement by the defendants of a breach (or in the case of tortious interference with business relations, intentional and unjustified interference with the relationship) and actual damages, so both claims fail on this record.

6

therefore unilaterally withheld Royalty Fees and Marketing Fund contributions owed to VaporFi. Complaint, ¶¶ 6, 9, 10, 78 & 87.

The fully integrated Franchise Agreements unambiguously precluded 4GP from offsetting any amounts it claimed were due from VaporFi. *See* Defendants' Statement of Material Facts ¶¶ 7–8 and Franchise Agreements § XIII.C. This provision is enforceable. *See Southern Broadcast Group, LLC v. Gem Broadcasting, Inc.*, 145 F. Supp. 2d 1316, 1331 (M.D. Fla. 2001) (enforcing an asset purchase agreement's "anti-offset provision," which provided that "Buyer shall have no right to offset any or all amounts collected or collectible…."); *see also Commodity Futures Trading Comm'n v. Sterling Trading Grp., Inc.*, 605 F. Supp. 2d 1245, 1264 (S.D. Fla. 2009) (customer did not have a right to offset where the contractual right to offset rested with the other party and not the customer). The Plaintiffs clearly and unambiguously agreed they could not offset. Therefore, after 4GP's repeated and long-standing refusal to pay the Royalty Fees and Marketing Fund contributions despite repeated written notice of amounts owed, VaporFi could terminate the Agreements.

The Plaintiff may assert that its principals relied on alleged oral statements that they could withhold Royalty Fees or Marketing Fund contributions while VaporFi was attempting to sort out alleged accounting issues, and that this creates a fact issue. While the assertion that such statements were made to Plaintiffs' principals is denied, that dispute of fact is not material to this motion because a party cannot reasonably rely on such statements in the face of clauses like those in the Agreements, as a matter of law. It is undisputed that the Agreements specifically precluded any change or amendment unless it was in writing and signed. Defendants' Statement of Material Facts, ¶ 8. It is undisputed that there was no written statement or communication telling 4GP it could withhold Royalty Fees or Marketing Fund contributions. Defendants' Statement of Material

82297755.1

Facts, ¶¶ 13–14.

In *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1351 (S.D. Fla. 1999), this Court granted a supplier's motion for summary judgment, holding that the distributors' alleged reliance on supplier's statements of "lasting partnership" and continuing supply of products was not justifiable, and thus distributors failed to state claims for promissory estoppel, where, like here, alleged statements were inconsistent and irreconcilable with express terms of parties' written agreement. This Court held in part that the alleged oral promises were inconsistent with the terms of the written agreement (*e.g.*, intent "to have a long-lasting partnership" and promise that distributors would "continue" to have exclusive rights to sell products were at odds with maximum two-year term under agreement). *Id.* at 1350. *Eclipse Medical* cited a Florida Supreme Court case that rejected a similar estoppel claim because the alleged promises "were made '*without any regard whatever* to the termination provision of the contract or *the contractual requirement that any modifications, amendments or changes be in writing*.'" *Id.*, citing *W.R. Grace & Co. v. Geodata Serv.*, Inc., 547 So.2d 919, 920 (Fla. 1989) (emphasis added). Further, this Court found that the distributors could not show justifiable reliance where the alleged promises were "completely inconsistent and irreconcilable with the express terms of the parties' written [a]greement." *Id.* at 1351.

Likewise, the Middle District of Florida granted an employer's motion to dismiss its former employee's promissory estoppel claim based on alleged oral promises. *Winnie v. Infectious Disease Associates, P.A.*, 2016 WL 11670293, at *7 (M.D. Fla. Sept. 21, 2016). The former employee claimed she relied on an oral statement by the employer that "her requested leave pursuant to her physician's estimated recovery period would 'not be a problem.'" *Id.* at *6. The former employee construed this statement as a promise that the employer would grant her the leave

8

of absence she requested, all benefits of the employer's leave of absence policy and reinstatement following her return. *Id.* However, the court found the alleged statement was inconsistent with the leave of absence policy itself, which explicitly stated that reinstatement was not guaranteed, even if leave were granted. *Id.* at *7. This inconsistency made the former employee's alleged reliance on the oral statement unjustified. *Id.*

Accordingly, the undisputed material facts show that Plaintiffs cannot sustain their claims and that Defendants are entitled to summary judgment as a matter of law.

**C.      Plaintiffs Cannot Establish the Necessary Elements of Improper Means or Damages to Defeat Summary Judgment.**

As a second additional basis to grant summary judgment to the Defendants on the tortious interference claim, the record is devoid of facts necessary for Plaintiff to sustain its burden of establishing essential elements of its claims, namely: (1) that Defendants acted with the required improper means or solely with malice; and (2) damages.

In *Johnson Ent. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d. 1290, 1321 (11th Cir. 1998) the Eleventh Circuit Court of Appeals held that "Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged." *See also Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 n. 9 (11th Cir. 2001) (the privilege to interfere is qualified "only where malice is the *sole* basis for interference") (emphasis in original).

Generally, a parent company is not liable for tortious interference with contract for directing conduct of its subsidiary even if the subsidiary's action as directed breaches that contract. *Johnson Ent. of Jacksonville, Inc*, 162 F.3d. at 1321–1322 (11th Cir. 1998). Such direction by the parent is privileged as a parent company has the requisite financial interest in the subsidiary's business to invoke the privilege and actions taken to safeguard or protect one's financial interest,

9

so long as improper means are not employed.  *Id.*, citing *Babson Bros. Co. v. Allison*, 337 So. 2d 848, 850 (Fla. 1st DCA 1976).

"Improper means" include "physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct." *Carlwood Safety, Inc. v. Wesco Distribution, Inc.*, 446 F. Supp. 3d 970, 980 n. 9 (M.D. Fla. 2020) (granting summary judgment in favor of defendant on plaintiff's tortious interference claim).  *See also* Florida Standard Jury Instructions in Civil Cases § 408.6 (2021) ("[A] person who interferes with another's business relations using ordinary business methods of competition does not interfere by an improper method.  But one who uses physical violence, misrepresentations, illegal conduct, threats of illegal conduct or other improper conduct has no privilege to use those methods, and interference using such methods is improper.").  The Eleventh Circuit in *Johnson Ent.* held that improper means requires more than harboring ill will or malice, stating, "it is irrelevant whether the person who takes authorized steps to protect his own interest does so while also harboring some personal malice or ill-will toward the plaintiff." *Id.* at 1322 (citation omitted).  Further, the court noted that even a purposeful act causing a subsidiary to breach is not enough to overcome the privilege.  *Id.* at 1322 n. 74.

In this Court's Order on the Motion to Dismiss, this Court noted that to prevail, the Plaintiff could show that the *sole* basis of the alleged interference was malice, stating that the Plaintiff "bears the difficult task of proving that the *sole* reason for the purported interference with the Agreements was malice." ECF Doc. 29 at 13 n. 3.  This the Plaintiffs cannot do.  There is no evidence to support the allegations in the two paragraphs of the Complaint cited by this Court as constituting sufficient allegations potentially to sustain this heavy burden.  *Id*, citing Compliant, ¶¶ 28 and 113 (or 112).  Indeed, one of these two paragraphs containing the allegations of "purely

10

82297755.1

malicious purpose" states that the basis for the allegation is "[u]pon further information and belief." Complaint, ¶ 28. This is even farther removed from having evidence of malice, as Plaintiffs are relying on "information and belief" only—not any particular fact—and have no such evidence now.

Plaintiffs cannot establish as a matter of law that Defendants acted with malice, let alone that the sole reason for the alleged actions was malice. The record is totally bereft of evidence of the necessary malice or of physical violence, misrepresentations, intimidation, conspiratorial conduct, illegal conduct, and threats of illegal conduct by any Defendant. Indeed, even if Plaintiff could come forward with evidence to support the bald allegations in the Complaint that the corporate defendants or employees were motivated to retaliate for Plaintiffs' complaining to the franchisor, which it cannot, that would still be insufficient to support a finding of *sole* motivation of malice as a matter of law. In *Menendez v. Beech Acceptance Corp*., a Florida court of appeals noted that "conduct engaged in for legitimate purposes, even if tinged with animosity and malice, does not give rise to a cause of action for interference with contractual relationship." *Menendez v. Beech Acceptance Corp.*, 521 So. 2d 178, 180 (Fla. 3d DCA 1988) (finding no tortious interference where defendant's actions protected its own financial interests at the expense of plaintiff's financial interests). As shown above, VaporFi had the right to terminate the Agreements, and thus, the termination was consistent with legitimate purposes.

In addition, Plaintiff cannot prove any damage resulting from the alleged tortious interference, as required. *See Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994) ("[P]roof of damages [i]s an essential element of a tortious interference claim."). Plaintiffs cannot show facts sufficient to prove the necessary elements or even to create a disputed fact in this regard.

11

In *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So.2d. 706, 708 (2008), for example, a Florida court of appeals reversed the trial court's finding of tortious interference with business relations and remanded for judgment in favor of defendants on the tortious interference claim.   Key to the court's analysis was that plaintiff had failed to show evidence of damages for the tortious interference claim.  *Id.*   As a result, the court reversed the trial court's award of nominal damages of $1,000: "We further reverse as to the nominal damages award because proof of actual damages is an element of a cause of action for tortious interference, and, as the trial court found, [plaintiff] failed to prove actual damages."  *Id.*

Plaintiffs have failed to come forward with any evidence of actual damages.  In discovery, Defendants specifically requested that plaintiffs provide the category of damages they were claiming with the calculation and the basis for those damages:

> 6.  List and describe each category of damages You are claiming in this case and describe how You calculated the amounts of each category of damages.  List and describe any supporting Documents.

> 8.  State the factual basis and identify the persons and Documents that support your claim as alleged in ¶¶ 36 and 38 of the Complaint that "Defendants . . . in the aggregate have caused a catastrophic level of economic harm to Plaintiffs, in excess of their $1,500,000 investments" and that "Plaintiffs have sustained and continue to sustain catastrophic financial losses and monetary damages of more than $2 million."

Defendants provided absolutely no response (nor any objections).  Defendants' Statement of Material Facts, ¶ 21.  Defendants further requested documents supporting the claims and the damages claimed.  The requests and the responses include:

82297755.1

7.  Any and all Documents supporting your efforts to mitigate the damages You are claiming in this case, including but not limited to communications or other writings between You and any broker or listing agent, relating to an effort to sell the Franchised Business and/or any other business owned or operated by you offering the same or similar products as the Franchised Business from 2014 to the present.

**RESPONSE:**  Plaintiffs object to this request on the basis that it is vague, overbroad, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, Plaintiffs shall produce all relevant documents responsive to this request.

8.   Any and all Documents relating to and/or supporting Your claimed damages requested in this case, including: (a) all documents supporting Your claim that investments in Your Franchised Business exceed $1,500,000, as alleged in ¶ 36 of the Complaint; (b) all documents supporting Your claims for compensatory, consequential and punitive damages against Defendants, as alleged in ¶ 37 of the Complaint; and (c) all documents supporting Your claim that You have sustained and continue to sustain catastrophic financial losses and monetary damages of more than $2 million, as alleged in ¶ 38 of the Complaint; (d) Your federal and state tax returns, including all schedules and addenda, submitted by You in any way related to the Franchised Business, the Franchise Agreements or the Development Agreement, and/or any other business owned or operated by you offering the same or similar products as the Franchised Business from 2014 to the present; and (e) and any and all monthly income statements, balance sheets, financial statements, and any other documents indicating profits or

13

losses, for each year You operated the Franchised Business, and any other business owned or operated by You offering the same or similar products as the Franchised Business from 2014 to the present.

**RESPONSE:**  Plaintiffs shall produce all documents responsive to this request.

To date, Plaintiffs have not provided any documents.[5]  Plaintiffs provided no documents in connection with the required Initial Disclosures pursuant to Federal Rule of Civil Procedure 26, or in response to the discovery requests.  Defendants' Statement of Material Facts, ¶¶ 15, 22.  Because discovery has closed, 4GP is precluded from presenting the requested evidence—even if it does exist.  *See, e.g.*, *Steelman v. Pirates Cove Fla. Plaza, Inc.*, 2013 WL 1831994, at *2 (M.D. Fla. May 1, 2013) (granting summary judgment to, and entering judgment in favor of, defendant, where discovery period had closed and plaintiff failed to produce expert witness reports or any other evidence needed to establish elements of the claim).

## CONCLUSION

For the above stated reasons, Defendants respectfully request that this Court grant summary judgment as to all Defendants on the remaining claim of "Tortious Interference with Franchise and Development Agreements."

Dated: February 28, 2022

---

[5] In connection with the failed mediation held on February 25, 2022, Plaintiffs did provide a spreadsheet purportedly listing a summary of annual profit and loss and balance sheets aggregated from the stores.  This, however, is not a proper measure of damages for a claim of tortious interference by termination.  Nor have Plaintiffs provided any of the actual records or back up.

14

82297755.1

Respectfully submitted,

*/s/ Brendan Herbert*
Brendan I. Herbert, Esquire
Florida Bar No. 76925
bherbert@polsinelli.com
POLSINELLI PC
315 S. Biscayne Boulevard, Suite 400
Miami, Florida 33131
Tel.:  305-921-1820
Fax:  305-921-1801

Leonard H. MacPhee, Esquire *
lmacphee@polsinelli.com
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, Colorado  80202
Telephone:  (303) 583-8234
*Pro Hac Vice

*Attorneys for Defendants, Turning Point Brands Inc., International Vapor Group, LLC, Graham Purdy, Marc Waxman and Cortni Lewis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed using the CM/ECF system which will provide notice to all counsel of record this 28th day of February, 2022:

*Counsel for Plaintiff*
Matthew Person
Person Law
9560 NW 41 Street
Doral, FL 33178
Telephone:  (305) 640-5754
Fax:  (888) 402-6190
matt@personlawoffices.com

*Counsel for Plaintiff*
Louis D. Tambaro
Offit Kurman, P.A.
louis.tambaro@offitkurman.com
Pro Hac Vice

*/s/ Brendan Herbert*
Brendan I. Herbert, Esquire

15

82297755.1