UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


CASE NO. 1:20-cv-24390-JEM

4 GP, INC., a corporation,
BRETT RICE, an individual,
and VICTOR BONOMI, an individual,

      Plaintiffs,

vs.

TURNING POINT BRANDS, INC.,
INTERNATIONAL VAPOR GROUP, LLC,
GRAHAM PURDY, an individual,
MARC WAXMAN, an individual,
CORTNI LEWIS an individual,
JOHN DOES 1–10, and
ABC COMPANIES 1–10,

      Defendants.

_____/


**DEFENDANTS' STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants, Turning Point Brands, Inc. ("TPB"), International Vapor Group, LLC

("IVG"), Graham Purdy ("Purdy"), Marc Waxman ("Waxman"), and Cortni Lewis ("Lewis")

(collectively "Defendants"), through undersigned counsel, seek summary judgment on the

remaining claim asserted by plaintiff 4 GP, Inc. ("4GP," "Plaintiff," or sometimes "Plaintiffs"),

pursuant to Fed. R. Civ. P. 56, and pursuant to Local Rule 56(a), submit the following Statement

of Material Facts that are not genuinely disputed:

    1.     4GP entered into a development agreement with VaporFi Franchising LLC

("VaporFi") dated September 18, 2014 ("Development Agreement"), pursuant to which VaporFi

granted 4GP the right to open and operate five VaporFi franchised locations in the greater

1

82184938

Washington, D.C. area.  A true and correct copy of the Development Agreement is attached to the Declaration of Cortni Lewis, at <u>Exhibit A</u> thereto.  *See also* Complaint [ECF Doc. No. 1] ¶¶ 62, 67, 68.

2.      4GP then entered into four franchise agreements with VaporFi for four locations, with each franchise agreement granting 4GP the right to own and operate a specific VaporFi franchised location pursuant to the terms and conditions thereof.  *Id.* at ¶¶ 67–68.  The four franchise agreements (individually, "Franchise Agreement," and collectively, "Franchise Agreements") are attached to the Declaration of Cortni Lewis, at <u>Exhibit B</u> through <u>Exhibit E</u>.  The Franchise Agreements were entered into as follows: Franchise Agreement dated September 18, 2014 for a location in Woodbridge, Virginia ("Potomac Mills") (Declaration of Cortni Lewis, at <u>Exhibit B</u>); Franchise Agreement dated January 16, 2015 for a location in Washington, D.C. ("Georgetown") (Declaration of Cortni Lewis, at <u>Exhibit C</u>); Franchise Agreement dated March 12, 2015 for a location in Arlington, Virginia ("Columbia Pike") (Declaration of Cortni Lewis, at <u>Exhibit D</u>); and Franchise Agreement dated March 12, 2015 for a location in Alexandria, Virginia ("Huntington") (Declaration of Cortni Lewis, at <u>Exhibit E</u>).

3.      Brett Rice and Victor Bonomi are two of 4GP's four owners.  Complaint ¶¶ 40–41. *See also* <u>Exhibit E</u> to each Franchise Agreement, which are attached to the Declaration of Cortni Lewis, at <u>Exhibit B</u> through <u>Exhibit E</u>, and list the four owners of 4GP.

4.      The Franchise Agreements required 4GP to pay Royalty Fees to VaporFi based on sales:

B.      Royalty Fee

During the term of this Agreement, Franchisee shall pay to Franchisor by the 10th day of each month during the Term for the preceding month, a royalty fee ("Royalty Fee") in an amount equal to the greater of $950 (the "Minimum Royalty") or 6% of all Revenues.

2

82184938

*See* Franchise Agreements § III.B:

5.  The Franchise Agreements also required 4GP to pay a percentage of sales toward VaporFi's Marketing Fund:

A.  Marketing Fee

1)  Recognizing the value of marketing to the goodwill and public image of VaporFi, Franchisor has established and will administer a marketing fund (the "Marketing Fund") for such marketing (including advertising, promotion, public relations and other marketing programs) as Franchisor deems necessary or appropriate, in its sole discretion. Franchisee shall then contribute to the Marketing Fund on a monthly basis, an amount equal to a minimum of two percent (2%) of the Revenues for the preceding month, concurrently with the payment of the Royalty. Shops owned by Franchisor and its affiliates will contribute to the Marketing Fund on the same basis as Franchisee.

See Franchise Agreements § XL.A. (1).

6.  The Franchise Agreements provided that VaporFi could terminate them for non-payment of the Royalty Fees if 4GP did not cure the default of failing to pay within five (5) days after VaporFi provided notice to them that the amounts were overdue:

8)  Failure to Pay Obligations to Franchisor

Franchisee fails to pay any amounts due to Franchisor or an affiliate of Franchisor, within five (5) days after receiving written notice that any such amounts are overdue.

*See* Franchise Agreements § XIX.B (8).

7.  The Franchise Agreements provided that 4GP could not offset the Royalty Fees or Marketing Fund contributions obligations with amounts that VaporFi owed to 4GP:

C.  Withholding Payments

Franchisee shall not, for any reason, withhold payment of any Royalty Fees or other amounts due to Franchisor. Franchisee shall not withhold or offset any amounts, damages or other monies allegedly due to Franchisee against any amounts due to Franchisor. No endorsement or statement on any payment for less than the full amount due to Franchisor will be construed as an acknowledgment of payment in full, or an accord and satisfaction, and Franchisor has the right to

3

82184938

accept and cash any such payment without prejudice to Franchisor's right to recover the full amount due, or pursue any other remedy provided in this Agreement or by law. Franchisor has the right to apply any payments made by Franchisee against any of Franchisee's past due indebtedness as Franchisor deems appropriate. Franchisor shall set off sums Franchisor owes to Franchisee against any unpaid debts owed by Franchisee to Franchisor.

*See* Franchise Agreements § XIII.C (emphasis added).

8. The Franchise Agreements provided that no term could be amended or changed unless in writing and signed by both parties.

D. Entire Agreement

THE UNDERSIGNED ACKNOWLEDGES THAT THEY, AND EACH OF THEM, HAVE READ THIS AGREEMENT IN FULL; HAVE BEEN SUPPLIED WITH A DISCLOSURE DOCUMENT IN ACCORDANCE TO FEDERAL AND STATE LAW; ARE COGNIZANT OF EACH AND EVERY ONE OF THE TERMS AND PROVISIONS HEREOF AND ARE AGREEABLE THERETO; THAT NO REPRESENTATIONS OR AGREEMENTS, WHETHER ORAL OR WRITTEN, EXCEPT AS HEREIN SET FORTH, HAVE BEEN MADE OR RELIED UPON; THAT THE SIGNATURES AFFIXED HERETO WERE AFFIXED AS THE WHOLLY VOLUNTARY ACT OF THE PERSONS WHO SIGNED THIS AGREEMENT; AND THAT THE TERMS AND PROVISIONS OF THIS AGREEMENT CANNOT BE CHANGED OR MODIFIED UNLESS IN WRITING SIGNED BY AN AUTHORIZED REPRESENTATIVE OF FRANCHISOR; THAT THE UNDERSIGNED REALIZES THAT THERE CAN BE NO GUARANTY OF SUCCESS, SINCE FRANCHISEE'S BUSINESS ABILITY, APTITUDE, AND INDUSTRIOUS DISPOSITION ARE PRIMARY IN FRANCHISEE'S SUCCESS. NOTHING IN THIS OR IN ANY RELATED AGREEMENT, IS INTENDED TO DISCLAIM THE REPRESENTATIONS FRANCHISOR HAS MADE IN THE FRANCHISE DISCLOSURE DOCUMENT FURNISHED TO YOU BY THE FRANCHISOR.

*See* Franchise Agreements §§ XXII.D (emphasis added).

9. The Franchise Agreements and Development Agreement provided that VaporFi could terminate each respective agreement for failure to cure a default of any of the other agreements.

4

82184938

1)      Other Agreements

Default under any other agreement between Franchisee and Franchisor, including the Promissory Note for the balance of the Initial Franchise Fee, or under the Lease, which default is not cured within the period required in said agreement(s). A default under this Agreement shall be deemed a default under any other Franchise Agreement between Franchisor and Franchisee.

*See* Franchise Agreements § XIX.B (1); *see also* Development Agreement § VII.A (7):

10.     4GP consistently failed to pay owed Royalty Fees and Marketing Fund contributions throughout 2018 and 2019.  *See* Declaration of Cortni Lewis, ¶ 5.

11.     VaporFi provided written notice to 4GP every month that 4GP owed said Royalty Fees and Marketing Fund contributions.  *See* Declaration of Cortni Lewis, ¶ 6.  These monthly statements provided notice to 4GP of its then-current balances owed to VaporFi and attached an accounting of Royalty Fees, Marketing Fund contributions, product orders, sales and refunds, reconciliation monies, discounts and other amounts.  *Id.*  Multiple of these written notices stated in their subject lines that they were providing notice of 4GP's "Past Due Amounts."  *Id.* Specifically, for example:

    a.  For the month of January 2019, 4GP owed but did not pay its balance of $906.66.  *See* Declaration of Cortni Lewis, ¶ 6.a. and <u>Exhibit F</u> thereto, p. 1.

    b.  For the month of February 2019, 4GP owed but did not pay its balance of $1,340.44. *See* Declaration of Cortni Lewis, ¶ 6.b. and <u>Exhibit F</u> thereto, p. 2.

    c.  For the month of March 2019, 4GP owed but did not pay its balance of $2,178.59. *See* Declaration of Cortni Lewis, ¶ 6.c. and <u>Exhibit F</u> thereto, p. 1.

    d.  For the month of April 2019, 4GP owed but did not pay its balance of $3,216.26. *See* Declaration of Cortni Lewis, ¶ 6.d. and <u>Exhibit F</u> thereto, p. 1.

e.  For the month of May 2019, 4GP owed but did not pay its balance of $4,338.12. *See* Declaration of Cortni Lewis, ¶ 6.e. and Exhibit F thereto, p. 1.

f.  For the month of June 2019, 4GP owed but did not pay its balance of $5,283.52. *See* Declaration of Cortni Lewis, ¶ 6.f. and Exhibit F thereto, p. 1.

12.  Notwithstanding the written notices, 4GP did not pay the above-noted Royalty Fees or Marketing Fund contributions. *See* Declaration of Cortni Lewis, ¶ 7.

13.  No one, including Cortni Lewis, told 4GP that they could withhold or not pay their Royalty Fees or Marketing Fund contributions. *See* Declaration of Cortni Lewis, ¶ 8.

14.  There is no written communication, nor any writing or signed document or communication, indicating to plaintiffs that they could withhold the Royalty Fees or Marketing Fund contributions at any time. *See* Declaration of Cortni Lewis, ¶ 8.

15.  On May 26, 2021, Plaintiffs served on Defendants Plaintiffs' Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) ("Initial Disclosures").  *See* Declaration of Leonard MacPhee, ¶ 4 and Exhibit A thereto.   However, Plaintiff has provided no documents pursuant to those disclosures. *Id.*

16.  Pursuant to the December 7, 2021 Order Granting in Part Joint Motion to Amend Scheduling Order [ECF Doc. No. 28], discovery was to be completed by January 31, 2022. *See* ECF Doc. No. 28, ¶ 3 and Declaration of Leonard MacPhee, ¶ 5

17.  On December 31, 2021, Defendants served Defendants' First Set of Requests for Production of Documents ("Requests for Production") and Defendants' First Set of Interrogatories ("Interrogatories") on Plaintiffs.  *See* Declaration of Leonard MacPhee, ¶ 6 and Exhibit B thereto.

18.  In the Interrogatories, Defendants requested that Plaintiffs provide the category of damages they were claiming as well as the calculation and basis for those damages.  *See*

6

82184938

Declaration of Leonard MacPhee, ¶ 7 and Exhibit B thereto, Interrogatories, Nos. 6 and 8.

19.      In the Requests for Production, Defendants requested that Plaintiffs produce documents supporting the claims and damages claimed in their Complaint. *See* Declaration of Leonard MacPhee, ¶ 8 and Exhibit B thereto, Requests for Production, Nos. 7 and 8.

20.      On February 2, 2022, Plaintiffs served Plaintiffs' Objections and Responses to Defendants' First Set of Requests for Production of Documents. *See* Declaration of Leonard MacPhee, ¶ 9 and Exhibit C thereto. Plaintiffs responded with objections to the requests and stated that "Plaintiffs shall produce all documents responsive to this request." *Id.* However, to date, Plaintiffs have provided no documents.[1] *Id.* at ¶¶ 10–11.

21.      Plaintiff never responded to the Interrogatories in any way—Defendants have received no written responses or objections at all. *See* Declaration of Leonard MacPhee, ¶ 10.

22.      Plaintiff never produced any documents in response to the Requests for Production. *See* Declaration of Leonard MacPhee, ¶ 11.

Dated: February 28, 2022

---

[1] In connection with the failed mediation on February 25, 2022, Plaintiffs provided an aggregated one-page summary P&L and one page balance sheet from the business for the years it was open and operating.

82184938

Respectfully submitted,

*/s/ Brendan I. Herbert*
Brendan I. Herbert, Esquire
Florida Bar No. 76925
bherbert@polsinelli.com
POLSINELLI PC
315 S. Biscayne Boulevard, Suite 400
Miami, Florida 33131
Tel.:  305-921-1820
Fax:  305-921-1801

Leonard H. MacPhee, Esquire *
lmacphee@polsinelli.com
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
Telephone:  (303) 583-8234
*Pro Hac Vice

*Attorneys for Defendants, Turning Point Brands Inc., International Vapor Group, LLC, Graham Purdy, Marc Waxman and Cortni Lewis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed using the CM/ECF system which will provide notice to all counsel of record this 28th day of February, 2022:

*Counsel for Plaintiff*
Matthew Person
Person Law
9560 NW 41 Street
Doral, FL 33178
Telephone:  (305) 640-5754
Fax:  (888) 402-6190
matt@personlawoffices.com

*Counsel for Plaintiff*
Louis D. Tambaro
Offit Kurman, P.A.
louis.tambaro@offitkurman.com
Pro Hac Vice

*/s/ Brendan I. Herbert*
Brendan I. Herbert, Esquire

8

82184938