

5201 Interchange Way
Louisville, KY 40229
(502) 778-4421

July 26, 2019

Victor Bonomi, Brett Rice, Scott Parker and Jeff Bade
4 GP, Inc.
9357 Mount Vernon Circle
Alexandria, VA 22309

and

4 GP, Inc.
1800 Mount Vernon Avenue
Alexandria, VA 22301

### <u>NOTICE OF TERMINATION</u>

\* VIA OVERNIGHT MAIL \*

Dear Messrs. Bonomi, Rice, Parker and Bade,

I am writing you on behalf of our subsidiary, VaporFi Franchising, LLC ("Franchisor") concerning three vapor shops ("Shops") you are currently operating under the VaporFi trade dress ("Marks").

Reference is made to the Franchise Agreement that each of you executed on: (a) January 16, 2015 for the Washington, D.C. Shop location ("Georgetown"); (b) March 12, 2015 for the Arlington, Virginia Shop location ("Columbia Pike"), and; (c) March 12, 2015 for the Alexandria, Virginia Shop location ("Huntington"), as well as all Addenda thereto. Reference is also made to the Development Agreement between Franchisor and "AGP Inc." and "4GP Corp." executed by you on September 18, 2014, inclusive of the Guaranty and Assumption of Obligations signed by you in your individual capacities.

It is our understanding that you have failed to remit any Royalty Fees or Marketing Fund Contributions (as defined in your Franchise Agreements for the three Shops) since December 2017. Your multiple defaults in failing to pay Royalty Fees or Marketing Fund Contributions to Franchisor for your three Shops remain uncured, despite repeated efforts by Franchisor to collect. Section III(B) of the Franchise Agreement requires you to pay the Royalty Fee by the tenth day of each month during the Term. The Minimum Royalty is $475 (per First Amendment to VaporFi Franchise Agreement dated November 24, 2014). You have made no payments for any of your three Shops—not even the Minimum Royalty-- despite the LONG passage of time in default.

turningpointbrands.com

You sent Franchisor an email dated May 24, 2019 claiming a dispute ("amounts I dispute, and are not owed"), yet you neglected to provide *any substantiation or support* for this statement. Franchisor provided a response dated May 28, 2019, advising that Franchisor has the right of set-off as provided under the Franchise Agreement. See Section XIII(A) of the Franchise Agreement. You acknowledged receipt of this letter on May 31, 2019. You do not have the right to withhold payments. See Section XIII(C).

By copy of this letter, Franchisor is advising you that each of your three Franchises are hereby **terminated** in accordance with Section XIX of the Franchise Agreement. This includes the Franchise Agreements for Georgetown, Columbia Pike and Huntington. Your Development Agreement is likewise terminated, and any fees paid are forfeited.

[Without limiting the foregoing, it would appear based upon our records that your Huntington lease expired on March 31, 2017 and your Columbia Pike lease expired on June 30, 2018. Section II(A) of the Franchise Agreement shortens the Term if the lease expires first. It has come to our attention that you have not provided any lease renewal records].

In accordance with Section XX of the Franchise Agreement, you are advised that you must **immediately cease** all use of the Marks or any other property connected with the VaporFi franchise. Franchisor also requires you to **de-identify** each of your locations as well as change telephone numbers and other public information listings which designate the location as a VaporFi Franchise. You must also immediately return all confidential manuals or training materials in your possession.

Without waiving any of Franchisor's rights, we are willing to make a one-time settlement offer ("Offer") to you. Section XX(E) of the Franchise Agreement requires you to pay liquidated damages (calculated as the average monthly Royalty Fees for the past twenty-four months). Please refer to the attached Mutual Release of All Claims ("Release"). In exchange for your executing the attached Release and completing the de-imaging and related requirements in this letter, we will pay you the sum of $6,000 within thirty days.

We have determined that a Protected Territory payment of $5,999.02 would otherwise be due to you utilizing a revised methodology for calculating all Franchisor internet sales with zip code mapping to the Protected Territory. However, any funds otherwise due to you are normally subject to set-off for amounts owed to us. Our Offer does not set-off for Royalty Fees or Marketing Fund Contributions. Our Offer does not include any liquidated damages that would otherwise be payable by you. It is consideration being offered by us to resolve any and all issues, via the enclosed Release, on an amicable basis.

You have an opportunity to operate your locations as independent vapor shops, so long as you de-identify with the Marks and comply with the terms of the Release and the post-termination obligations set forth in each Franchise Agreement (some of which are outlined for convenience in this letter).

Page **3** of **4**

This Offer is being made pursuant to FRE 408 and its state counterpart, Fl. Stat. 90.408. This Offer expires the earlier of: (a) Friday, August 9, 2019 at 5:00 p.m., or (b) any prior rejection of this Offer. Any counteroffer constitutes a rejection of this Offer and no subsequent offers will be made by us. A failure to meet any other terms of this Offer (e.g., refusing to de-image) shall constitute a rejection. Franchisor reserves all rights, whether at law or in equity, including enforcement of Franchisor's intellectual property rights as provided by the Lanham Act.

Any dispute between the parties shall be determined by binding arbitration per Section XXII(L) of the Franchise Agreement in accordance with Florida law per Section XXII(K). Should arbitration be necessary, we reserve our right to pursue all monies owed to Franchisor in addition to all other remedies available to Franchisor.

Time is of the essence. Should you choose to accept our Offer within the time indicated, please execute the enclosed Release, indicate the date signed on the first page and return to me at the address on this letter. All communications should be in writing and sent to my attention in the Legal Department. We will not accept any telephone calls directed to our Franchise Team.

Respectfully,

Donald R. Becker, Esq.
Assistant General Counsel
Turning Point Brands, Inc.
dbecker@tpbi.com
On behalf of VaporFi Franchising, LLC

Enclosures:

        *Attachment A- List of Defaults Within Past Twelve Months*
        *Mutual Release of All Claims*






Attachment A

## List of Defaults Within
## Past Twelve Months

1. 8/15/18
2. 9/14/18
3. 10/24/18
4. 11/6/18
5. 12/6/18
6. 1/16/19
7. 2/27/19
8. 3/13/19
9. 4/11/19
10. 5/14/19
     a. 5/24/19 response from Franchisee
     b. 5/28/19 response from Franchisor
11. 6/21/19
12. 7/15/19 (Franchisor resent prior information)

   

**MUTUAL RELEASE OF ALL CLAIMS**

This **MUTUAL RELEASE RELEASE OF ALL CLAIMS** (this "Agreement") is made and entered into as of _____ [Month]_____ [Day], 2019, between VaporFi Franchising, LLC, a Delaware limited liability company ("Franchisor"); 4 GP, Inc. a Virginia corporation ("Franchisee"); and Victor Bonomi, Brett Rice, Scott Parker and Jeff Bade (each a "Guarantor" and together with Franchisee, the "Franchisee Parties"). Franchisor and the Franchisee Parties are sometimes referred to herein, individually, as a "Party" and, collectively, as the "Parties".

A. Franchisee and Franchisor entered into a certain VaporFi Franchise Agreement dated January 16, 2015 ("Georgetown Agreement"), a VaporFi Franchise Agreement dated March 12, 2015 ("Columbia Pike Agreement") and a VaporFi Franchise Agreement dated March 12, 2015 ("Huntington Agreement") (collectively, the "Franchise Agreements").

B. Franchisee and Franchisor also entered into a certain VaporFi Franchise Agreement dated September 18, 2014 ("Potomac Agreement") (the "Prior Franchise Agreement").

C. Franchisee simultaneously executed with each Franchise Agreement a certain Promissory Note dated September 18, 2014, January 16, 2015, March 12, 2015 and March 12, 2015, respectively (the "Promissory Notes") in Franchisor's favor.

D. Franchisee and Franchisor also entered into a Development Agreement dated September 18, 2014 (the "Development Agreement").

E. Guarantor simultaneously executed with each Franchise Agreement and Promissory Note that certain Guaranty of Franchisee's obligations dated September 18, 2014, January 16, 2015, March 12, 2015 and March 12, 2015, respectively (the "Guaranties").

F. Guarantor simultaneously executed with the Development Agreement that certain Guaranty and Assumption of Obligations dated September 18, 2014 (the "Development Guaranty").

G. Each of the Franchisor and the Franchisee Parties and Guarantors mutually desire pursuant to this Agreement to terminate the Franchise Agreements, Development Agreement, Promissory Notes and the Guaranties, and release each other from further obligations arising under or in connection therewith, including the Prior Franchise Agreement (except for certain post-termination obligations as set forth herein), effective as of the date of this Agreement.

NOW THEREFORE, in consideration of the premises, the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Recitals. The foregoing recitals are true and incorporated in this Agreement.

2. Definitions. Unless otherwise defined in this Agreement, all capitalized terms used but not otherwise defined in this Agreement shall have the respective meanings ascribed to them in the Franchise Agreements, Prior Franchise Agreement, Development Agreement, Promissory Notes or the Guaranties, as the context requires.

3.      Mutual Termination of Franchise Agreements, Development Agreement, Promissory Notes and Guaranties. Effective as of the date hereof, the Parties mutually agree that, except as otherwise set forth in this Agreement below: (a) the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes and Guaranties are hereby terminated and of no further force or effect, (b) the rights and obligations of the Parties thereunder, as applicable, are hereby terminated, and (c) no party to the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties shall have any further rights, obligations or liabilities thereunder or with respect thereto.

4.      General Mutual Releases.

(a)      Except for the obligations of the Franchisor set forth in this Agreement, effective as of the date of this Agreement, the Franchisee Parties, on behalf of themselves and their Related Parties (as defined below), hereby absolutely, unconditionally, and irrevocably release, remise, and forever discharge Franchisor and its Related Parties from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of  money, accounts, bills, debts, reckonings, damages, and any and all other claims, counterclaims, defenses, rights of setoff, demands, and liabilities whatsoever (individually, a "Claim" and collectively, "Claims") of every kind and nature, known or unknown, vested or contingent, suspected or unsuspected, at law or in equity, which either of them may now or hereafter own, hold, have, or claim to have against the other for, upon, or by reason of any circumstance, action, cause, or thing whatsoever based upon, arising out of or related to the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties, including, without limitation, Claims (i) arising under the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties,  or any other related agreement between any of the Franchisee Parties and Franchisor, (ii) arising from the Parties' conduct during the term of and relating to the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties, or (iii) arising under federal, state and local laws, rules or ordinances, including, but not limited to, federal and state franchise and deceptive trade practice laws and relating to the offer, sale, obligations, or performance under the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties; provided, however, that this Section 4(a) shall not have the effect of or be interpreted as terminating or releasing any Claim not arising under or relating to the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties that the Franchisee Parties or their Related Parties may have currently or in the future against Franchisor.

(b)      Except for the obligations of the Franchisee Parties set forth in this Agreement, effective as of the date of this Agreement, Franchisor, on behalf of itself and its Related Parties, hereby absolutely, unconditionally, and irrevocably releases, remises, and forever discharges the Franchisee Parties and their Related Parties from all Claims of every kind and nature, known or unknown, vested or contingent, suspected or unsuspected, at law or in equity, which it may now or hereafter own, hold, have, or claim to have against the other for, upon, or by reason of any circumstance, action, cause, or thing whatsoever based upon, arising out of or related to the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties, including, without limitation, the Claims (i) arising under the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties, or any other related agreement between any of the Franchisee Parties and Franchisor, (B) arising from the Parties' conduct during the term of and relating to the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties, or (C) arising under federal, state and local laws, rules or ordinances, including, but not limited to, federal and state franchise and deceptive trade practice laws and relating to the offer, sale or performance under the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties; provided, however, that this Section 4(b) shall not have the effect of or be

2

interpreted as terminating or releasing any Claim not arising under or relating to the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties that the Franchisor or its Related Parties may have currently or in the future against any of the Franchisee Parties.

(c)     For purposes of Sections 4(a) and 4(b), the "Related Parties" of a party shall mean such party's affiliates and its and their respective current and former officers, directors, shareholders, managers, members, partners, employees, parents, subsidiaries, divisions, affiliates, beneficiaries, representatives, and agents and the predecessors, successors, and assigns of the party, its affiliates, and the foregoing persons and entities.

(d)     Each Party understands, acknowledges, and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of the provisions of such release.

(e)     Each Party agrees that no fact, event, circumstance, evidence, or transaction that could now be asserted or that may hereafter be discovered shall affect in any manner the final, absolute, and unconditional nature of the release set forth above.

(f)     Each Party, on behalf of itself and its Related Parties, hereby absolutely, unconditionally, and irrevocably covenants and agrees with and in favor of the other that no Party will sue (at law, in equity, in any regulatory proceeding, or otherwise) the other on the basis of any Claim intended to be released, remised, or discharged pursuant to this Agreement.

(g)     Each Party agrees to indemnify, defend, and hold harmless the other from, against, and with respect to any and all loss, damage, claim, obligation, liability, cost, and expense (including, without limitation, reasonable attorneys' fees and costs and expenses incurred in investigating, preparing, defending against, or prosecuting any litigation, claim, proceeding, or demand), of any kind or character arising out of or in connection with any Claim brought by or on behalf of a releasing party that is intended to be released, remised, or discharged pursuant to this Agreement.

5.     Post-Termination Obligations.  The Parties acknowledge and agree that, notwithstanding the termination of the Franchise Agreements (including the Prior Franchise Agreement), Development Agreement, Promissory Notes or Guaranties as set forth in Section 3 and the mutual release of Claims as set forth in Section 4 of this Agreement, the Franchisee has certain post-termination obligations under the Franchise Agreement that shall continue in full force and effect and with which Franchisee shall comply and which shall continue to be guaranteed under the Guaranty until the full completion and satisfaction of all such post-termination obligations, including without limitation the following:

(a)     Franchisee can no longer use the Proprietary Marks or any other property connected with the Shop.

(b)     Franchisee will terminate any fictitious or assumed name registration.

(c)     Franchisee will not operate or do business under any name or in any manner that might tend to give the general public the impression that the former Shop is operating as a VaporFi Shop.

(d)     Upon termination of the Franchise Agreement pursuant to this Agreement, Franchisee forfeits all fees paid to Franchisor.

3

(e)     Franchisee will, within 30 days of this Agreement, change all telephone directory and other public information listings, including on social media, which designate the Shop as VaporFi.

(f)     If Franchisee remains in possession of the Franchise Location, Franchisee is required at Franchisee's sole cost and expense to de-identify and redecorate the Franchise Location, including removal of all signs and other items tending to identify the Shop as being connected with Franchisor or the System.

(g)     Franchisee must immediately cease using any of Franchisor's proprietary property.

(h)     Franchisee will immediately return to Franchisor the Franchisor's Confidential Manuals in all its forms, and all other documents, instructions, display items, advertising material, training tools, and other tangible property connected with the VaporFi Franchise.

6.     Authority.  By executing this Agreement, the Parties represent and warrant that each has the right and authority to enter into and to accept the terms and covenants of this Agreement, and that no third party has or claims an interest in any claim released by this Agreement.

7.     No Conflicts.  Each of the Parties hereby represents and warrants that its execution of this Agreement does not violate any other agreement to which it is a party.

8.     Non-Disparagement.  The Franchisee Parties will not disparage the Franchisor or any of the Franchisor's Related Parties or otherwise take any action which could reasonably be expected to adversely affect Franchisor's or the Franchisor's Related Parties' personal or professional reputation or portray the Franchisor's Related Parties or its products or services in a false, competitively adverse, or poor light.

9.     No Admission of Liability.  By signing this Agreement, no Party admits any liability to the other or the truth or falsity of any allegation, statement, communication or fact discussed, disclosed or communicated in any manner, regarding any transaction, communication, contact, statement or action between the Parties or in connection with this Agreement, the Franchise Agreement, or the Guaranty.

10.     Nondisclosure.  The Franchisee Parties will not, and will cause their Related Parties not to, discuss with, disclose to or communicate with anyone the terms of this Agreement or the facts surrounding, causing or resulting from the VaporFi Franchise including any prospective, existing or former VaporFi Franchisee, unless required by legal process.  The Franchisee Parties will only state that the Franchisee has left the VaporFi network.

11.     Miscellaneous.

(a)     Further Assurances.  Each of the Parties agrees to execute such further agreements as Franchisor or the Franchisee Parties may deem necessary or desirable to more fully effectuate the purpose and intent of this Agreement.

(b)     Governing Law.  The laws of the State of Florida, other than the conflicts of laws provisions thereof, shall govern all matters in any way arising out of or relating to this Agreement.

(c)     Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any and all other agreements, understandings, and representations, whether written or oral, relating to the subject matter of this

4

Agreement. This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors and assigns.

        (d)     Opportunity to Review. Each of the Franchisee Parties represents and warrants that it: (i) has had an opportunity to review this Agreement, (ii) has had an opportunity to consult with an attorney, and (iii) fully understands the content and legal effect of this Agreement.

        (e)     Section Headings. The section headings of this Agreement are for the convenience of the Parties only and in no way alter, modify, amend, limit, or restrict the contractual obligations of the Parties.

        (f)     Severability. The provisions of this Agreement are severable, and, in the event that any of them is held void and unenforceable as a matter of law, the remainder shall continue in full force and effect.

        (g)     Waiver. No delay or omission by the Parties to exercise any right or power hereunder shall impair such right or power or be construed to be a waiver thereof.

        (h)     Counterparts; Electronic Delivery. This Agreement may be executed and delivered by facsimile, attachment to electronic mail, or other electronic means and in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[SIGNATURE PAGES FOLLOW]

5

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, or have caused their duly authorized representatives to execute the same, as of the Effective Date.

**FRANCHISOR:**

**VaporFi Franchising, LLC**

By: _____

Print Name: _____

Title: _____

**FRANCHISEE:**

**4 GP, Inc.**

By: _____

Print Name: _____

Title: _____

**GUARANTORS:**

_____
Victor Bonomi

_____
Brett Rice

_____
Scott Parker

_____
Jeff Bade

*Signature Page to Mutual Release of All Claims*